**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-10-01217 |
| | § | (C.A. No. C-11-386) |
| ROLANDO LEYVA-TORRES, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE, DENYING
A CERTIFICATE OF APPEALABILITY, AND GRANTING
MOTION TO APPEAR *PRO HAC VICE***

Pending before the Court is Rolando Leyva-Torres' (Leyva-Torres) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 29.[1] Also before the Court is his attorney's motion for admission *pro hac vice*. D.E. 30. For the reasons set forth in this Order, the Court dismisses Leyva-Torres' motion to vacate. Additionally, the Court denies him a Certificate of Appealability. The Court grants counsel's motion to appear *pro hac vice*.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Docket entries refer to the criminal case.

1

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Leyva-Torres was arrested on December 7, 2010, at the Sarita, Texas Border Checkpoint after agents discovered a hidden passenger in the cab of Leyva-Torres' tractor-trailer.  The passenger was a non-citizen who admitted that he entered the United States by wading across the Rio Grande River.  D.E. 1. The passenger told the agents that he arranged to pay a smuggler $5000 to get him to Houston. He waited at the designated location and Leyva-Torres picked him up. Id.

Leyva-Torres was indicted on December 20, 2010. D.E. 13. He was charged with Transporting an Illegal Alien Within the United States by Means of a Motor Vehicle in violation of Title 8 Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii). Id.

Leyva-Torres was rearraigned in February 2011. He pled guilty without a plea agreement. Minute Entry February 15, 2011, D.E. 27. At rearraignment, one of this Court's first questions to Leyva-Torres was regarding his citizenship,

> 25 THE COURT: Where were you born?
> 1 THE DEFENDANT: In Matamoros, Mexico.
> 2 THE COURT: And where do you live?
> 3 THE DEFENDANT: In Brownsville, Texas.
> 4 THE COURT: And are you an American? Did you ever
> 5 become an American citizen?
> 6 THE DEFENDANT: Resident.
> 7 THE COURT: Do you understand that you will lose --
> 8 if you are convicted of this crime by your plea of guilty that
> 9 you'll lose your right to live within the United States and you
> 10 will not be allowed to reenter?
> 11 THE DEFENDANT: Yes.

D.E. 27 at 3-4. Later in the plea colloquy, the Court came back to the issue of deportation and

further questioned Leyva-Torres,

> 6 THE COURT: Do you understand that if you're not
> 7 convicted of this crime you may not be deported? Do you
> 8 understand that? Let's go over this.
> 9 If you are convicted of this crime either because of
> 10 your plea of guilty or because you are found guilty by a jury
> 11 after a trial, you will be sentenced by the Court and then you
> 12 will likely be deported from the United States after you serve
> 13 your sentence. I don't know how many persons you are alleged
> 14 to have transported on December the 7th. The document that I
> 15 have reflects only one person, but there may be more. And I
> 16 will have to take those into account at sentencing. But after
> 17 you are sentenced you will likely be deported from the United
> 18 States after you serve your sentence and you will not be
> 19 allowed to reenter. You can't come back to visit your family
> 20 is the point I'm trying to make.
> 21 If you have a trial and we go to trial and the jury
> 22 finds you not guilty, you may not be deported from the United
> 23 States. Do you understand that? It may be that the --
> 24 THE DEFENDANT: Yes.
> 25 THE COURT: It may be that the immigration service
> 1 would still try to move against you to deport you. I don't
> 2 know what they do. I'm not part of their organization. But I
> 3 do know that if you are convicted, you will be deported. I
> 4 know that if you're not convicted, you might not be deported.
> 5 Do you understand?
> 6 THE DEFENDANT: Yes.

Id. at 6-7.

The Court also advised Leyva-Torres of his trial rights, his right to counsel, asked whether he understood the charges against him, the maximum punishment, whether he was satisfied with the advice and efforts of his attorney, and asked whether his plea was voluntary. Leyva-Torres waived his right to trial, affirmed that he understood the charge against him, the possible punishment, expressed satisfaction with his counsel, and confirmed

3

that his plea was voluntary. Leyva-Torres pled guilty. Id. at 14. He agreed with the factual recitation by the government. Id. at 17-18.

The Probation Department prepared the PSR. D.E. 18. The PSR noted that Leyva-Torres was born in Mexico and was a permanent legal resident alien. D.E. 18 at p. 2.

Probation calculated Leyva-Torres' base level offense at 12. D.E. 18 at ¶ 14. Two points were subtracted for acceptance of responsibility. Id. at ¶ 20. Leyva-Torres' total offense level was 10. In 2008, Leyva-Torres pled guilty to Aiding and Abetting Undocumented Aliens to Enter the United States and was sentenced to 1 year probation. Id. at ¶ 25. He had one criminal history point, for a criminal history category of I. The guideline range of imprisonment was 6 to 12 months, to be followed by up to three years of supervised release. Id. at ¶¶ 44, 47.

Leyva-Torres was sentenced to 8 months in the Bureau of Prisons, 2 years supervised release and a $100 special assessment on April 27, 2011. Judgment was entered the same day. D.E. 21. Leyva-Torres did not appeal. He filed his motion to vacate in December 2011.

### III. MOVANT'S ALLEGATIONS

Leyva-Torres urges a single ground of relief, that his counsel was ineffective because counsel failed to advise him of the deportation consequences of his guilty plea. D.E. 29 at p. 5. He further alleges that he is no longer in custody of the Bureau of Prisons, but removal proceedings have been initiated against him by the Department of Homeland Security. The Bureau of Prisons website confirms that Leyva-Torres is no longer in its custody and was released on October 7, 2011.

4

Leyva-Torres' motion is supported by his Affidavit, D.E. 29 at pp. 16-17. In his Affidavit, Leyva-Torres avers that he asked his appointed attorney how his guilty plea would affect his permanent resident status, but counsel did not tell him. Id. at ¶¶ 7-8. Leyva-Torres admits that he did not consult with an immigration attorney. Id. at ¶ 9. Leyva-Torres further swears that the Court did not advise him that accepting the plea agreement would result in the loss of his legal permanent resident status. Id. at ¶ 11. He claims that if he had known that agreeing to the plea bargain would result in removal, he would have insisted on going to trial. Id. at ¶ 16.

## IV.  ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Leyva-Torres Is on Supervised Release, Is He in Custody as Required to Seek Relief Pursuant to 28 U.S.C. § 2255?**

Section 2255 relief is also limited to a particular class of persons as set out in the statute and in the rules governing its application. The statute applies to "A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released . . . ." 28 U.S.C. § 2255; see also RULE 1, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("These rules govern a motion filed in a United States district court under 28 U.S.C. § 2255 by (a) a person in custody under a judgment of that court . . . .").

Although Leyva-Torres states that he is no longer in the custody of the Bureau of Prisons, his sentence included two years of supervised release. He was released from the Bureau of Prisons in October 2011 and must still serve his supervised release. A preliminary question is whether Leyva-Torres is eligible to seek relief pursuant to § 2255.

A defendant who is subject to parole or to supervised release is still in custody for purposes of § 2255. See Jones v. Cunnigham, 371 U.S. 236, 240-43 (1963) (paroled prisoner in custody when the terms of his release impose "'significant restraints on petitioner's liberty because of his conviction and sentence"); United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997) (defendant on supervised release still in custody within the meaning of § 2255 "); United States v. Harvey, 113 F.3d 1243 at *1 (9th Cir. 1997) (designated unpublished) ("supervised release constitutes 'custody' for the purposes of § 2255."); Kusay v. United States, 62 F.3d 192, 193 (7th Cir. 1995) ("Kusay is serving a term of supervised release, a

6

form of custody . . . ."); United States v. Essig, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (supervised release satisfies the "in custody" requirement of § 2255); see also United States v. Zack, 173 F.3d 431 at *1 (6th Cir., Feb. 1, 1999) (designated unpublished) ("A defendant serving a term of supervised release is "in custody" for the purposes of § 2255."). The Fifth Circuit acknowledges that "'custody' signifies incarceration or supervised release, but in general it encompasses most restrictions on liberty resulting from a criminal conviction." Pack v. Yusuff, 218 F.3d 448,454 n.5 (5th Cir. 2000) (citing Jones v. Cunningham, 371 U.S. 236 (1963)).

**C.   Ineffective Assistance of Counsel**

   1.   *Standard for ineffective assistance claims*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577,

581 (2005).[2]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

    2.    *Claim that Leyva-Torres was not informed of deportation consequences*

Leyva-Torres claims both that counsel did not advise him of deportation consequences and this Court did not advise him. He claims that had he known that he would be deported if he pled guilty, he would not have accepted the plea agreement, but would instead have gone to trial. The portion of the plea colloquy during which this Court advised Leyva-Torres of the deportation consequences of his conviction is reproduced in Part II at page 3-4, *supra*, and contradicts Leyva-Torres' Affidavit.

In 2010, the Supreme Court held that counsel who did not advise a lawful permanent resident alien of his almost certain deportation if he was convicted of drug trafficking did not meet professional standards pursuant to Strickland v. Washington 466 U.S. 668 (1984). Padilla v. United States, — U.S. ----, 130 S.Ct. 1473, 1486 (2010). The Padilla Court did not

---

[2] The Fifth Circuit adopted the "any amount of jail time" test in United States v. Grammas, 376 F.3d 433, 439 (5th Cir. 2004). "This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland." Id. (internal citations omitted).

determine whether Padilla was prejudiced by this failure.[3]

A review of the proceedings after Leyva-Torres was arrested reveals that at rearraignment, this Court twice advised Leyva-Torres that he would be deported if he was convicted and Leyva-Torres testified both times that he understood the consequences. Furthermore, Leyva-Torres admitted the facts as outlined by the government during rearraignment. Leyva-Torres' affidavit is materially incorrect on several points which makes his Affidavit suspect in important respects.

Assuming that counsel failed to advise Leyva-Torres of the deportation consequences of his conviction, a fact this Court does not decide, Leyva-Torres cannot show prejudice from counsel's failure to advise him because when the Court advised him that he would be deported if convicted, Leyva-Torres testified he understood the consequence of deportation.

Courts give great weight to a defendant's statements during the plea colloquy. Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002); see also United States v. Abreo, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea); United States v. Maldonado-Rodriguez, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured). Accordingly, Leyva-Torres' statements that he understood that if he was

---

[3] "Taking as true the basis for his motion for postconviction relief, we have little difficulty concluding that Padilla has sufficiently alleged that his counsel was constitutionally deficient. Whether Padilla is entitled to relief will depend on whether he can demonstrate prejudice as a result thereof, a question we do not reach because it was not passed on below." Id. at 1486-87.

convicted, whether by his guilty plea or after a trial, he would be deported and not allowed to return to the United States, are given great weight. The record in this case precludes the relief that Leyva-Torres seeks which permits this Court to summarily rule on the motion without requiring a response by the government. See Rule 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). Under these circumstances, Leyva-Torres' motion to vacate is dismissed with prejudice.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Leyva-Torres has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Leyva-Torres is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Leyva-Torres' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 29) is DISMISSED with prejudice. He is also

11

DENIED a Certificate of Appealability. Counsel's motion to appear *pro hac vice* (D.E. 30) is GRANTED.

It is so ORDERED on the 31st day of January 2012.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE